IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BECKY A. DZIOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV403 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Becky A. Dziok, seeks review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 28, 2012, alleging a disability onset date of December 31, 2010. (Tr. 91-92, 117-18, 192-200.) The applications were denied initially and again upon reconsideration. (*Id.* at 71-90, 93-116.) A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, her attorney, and a vocational expert ("VE") were present. (*Id.* at 37-70.) On November 25, 2013, the ALJ

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 11.)

determined that Plaintiff was not disabled under the Act. (*Id.* at 20-29.) On June 8, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 476-82.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several

2

determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2010. (Tr. 22-23.) The ALJ next found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bilateral carpel tunnel syndrome, and obesity. (*Id.* at 23.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.*)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 23-28.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: Plaintiff

> could frequently reach, handle, and finger with the bilateral upper extremities; frequently balance, and stoop; frequently climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights.

(*Id.* at 23.) At the fourth step, the ALJ determined that Plaintiff was capable of performing past relevant work as a cosmetologist. (*Id.* at 28.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 28-29.)

## IV. ISSUES AND ANALYSIS

Plaintiff argues that the ALJ committed two errors that warrant remand. (Docket Entry 16.) First, Plaintiff contends that substantial evidence does not support the ALJ's RFC

---

points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

determination. (*Id.* at 9-14.) Second, Plaintiff argues that the ALJ posed an incomplete hypothetical to the VE. (*Id.* at 14.) For the following reasons, the Court disagrees.

### A. The RFC is Supported By Substantial Evidence

Plaintiff contends generally that the RFC is not supported by substantial evidence. (*Id.* at 9-14.) First addressing Plaintiff's general argument, RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (e.g., pain). *See* 20 C.F.R. § 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x. 264, 272 (4th Cir. 2015) (unpublished); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

Here, the ALJ reviewed the objective medical evidence, the opinion evidence, and Plaintiff's subjective complaints and determined Plaintiff had the RFC to perform a limited range of light work. (Tr. 23-28.) The ALJ reasoned,

> the overall evidence of record showed that [Plaintiff's] symptoms included pain in the bilateral arms, numbness in the bilateral hands with the left greater than the right, paresthesias and dysesthesias of the lower extremities, mild neck pain, low back pain, shoulder pain, non-cardiogenic chest pain, nausea, shortness of breath, and abdominal pain and diarrhea (Exhibits 1F, 2F, 3F, 5F, 6F, 7F, 12F, 15F, 16F, and 18F). [Plaintiff's] physical examinations, however, were generally unremarkable, except that at times she had some tenderness in the lower back, but she was able to bend fully (Exhibit 3F p. 10). Despite [Plaintiff's] subjective complaints, her physical examinations generally showed that she was alert and oriented, she was well-nourished and not in acute distress, her cardiovascular and

4

respiratory examinations were normal, her abdomen was normal, her muscle tone was normal in all four extremities, her muscle strength was 5/5 in all four extremities, she had normal gait, and a nerve study showed only subtle findings (Exhibits 2F, 3F, 5F, 14F, 15F, and 18F). In addition, the undersigned notes that [Plaintiff's] treatment of her impairments was generally conservative.

(Id. at 26, 292-347, 350-73, 397-448, 461-65, 467-75, 311, 299-347, 350-58, 457-62, 467-75.)

The record supports the ALJ's conclusions. As noted, the objective findings of record were generally benign and Plaintiff received conservative treatment. For example, Dr. Bruce S. Solomon's examinations generally revealed that Plaintiff was alert and oriented to person, place, month, and year; in no distress; had fluent speech; intact attention, concentration, memory, and fund of knowledge; intact cranial nerves; intact strength; intact coordination; normal muscle tone in all extremities; full strength (5/5) in all extremities; intact sensation; a normal gait; and no tenderness to palpation or pain in the spine and normal spine movements. (Tr. 25, 26, 300, 350, 364, 461-62, 468.) Plaintiff's diagnostic images were also generally benign, revealing mostly mild degenerative changes and "subtle" neuropathy. (Id. at 25-26, 352, 355, 357, 363-34, 465, 469.)[3] Plaintiff was treated with medication, which helped, therapy, which had

_____

[3] Specifically, the ALJ noted that Plaintiff had MRIs in March 2012 and June 2012. (Tr. 25.) The former, taken of lumbar spine, revealed a disc bulge at L4-L5 with mild to moderate right neural foraminal narrowing and mild narrowing of the right lateral recess, and a bulge at L3-L4 and L5-S1 without any associated stenosis or neural foraminal narrowing. (Id. at 25, 355.) The June 2012 cervical spine MRI revealed degenerative changes but no evidence of stenosis (Id. at 25, 364); specifically, the MRI showed mild straightening of normal cervical lordosis, and multilevel degenerative changes including a bulge at C4-5 with moderate narrowing of neural foramen and mild narrowing of central canal and right neural foramen and moderate narrowing of left neural foramen and mild narrowing of central canal and right neural foramen at C6-7. (Id. at 25, 363.) A July 2013 lumbar spine MRI revealed stable very mild multilevel degenerative changes, most pronounced at L4-5 where there was mild narrowing of both neural foramina. (Id. at 25-26, 465.) In addition, nerve conduction studies ("NCS") were also benign. (Id. at 25.) An April 2012 NCS did not demonstrate any radiculopathy (Id. at 25, 352, 357) and an August 2013 NCS was normal, and revealed, at most, a

5

no effect, and, at one point in 2012, a wrist splint. (*Id.* at 24, 26, 350, 364, 461, 491-92.) The record thus supports the ALJ's conclusion that Plaintiff was no more significantly limited than as provided for in the RFC.

The opinion evidence also supports the ALJ's RFC determination. The two relevant opinions are from Certified Physician Assistant (PA-C) Philip S. Perrotta and state agency consultant Hari Kuncha, M.D. (*Id.* at 27, 100-02, 112-13.) PA-C Perrotta opined Plaintiff could lift no more than seven to eight pounds, had to have frequent changes of position, could not stand for a prolonged period, would need frequent breaks, and could work no more than six hours per day. (*Id.* at 27, 466.) Dr. Kuncha opined that Plaintiff could perform the full range of light work. (*Id.* at 27, 100-102, 112-113.)

The ALJ found that PA-C Perrotta's opinion was "not generally consistent with the evidence of record, which showed that [Plaintiff's] physical examinations were generally unremarkable with no motor or neurological deficits . . . ." (*Id.* at 27, 466.) As noted above, the record supports the ALJ's characterization of Plaintiff's examinations as unremarkable. (*Id.* at 27.) The ALJ therefore properly gave PA-C Perrotta's opinion little weight. In contrast, the ALJ found that Dr. Kuncha's opinion that Plaintiff could perform light work *was* consistent with the medical evidence and Plaintiff's unremarkable physical examinations. (*Id.* at 27, 100-102, 112-13.) However, the ALJ also concluded that "Dr. Kuncha did not adequately consider Plaintiff's subjective complaints and the combined effect of her impairments." (*Id.*) Consequently, the ALJ gave some weight to Dr. Kuncha's opinion (*id.*

---

"very subtle" mild neuropathy distally. (*Id.* at 26, 469.) Bruce Solomon, D.O, Plaintiff's neurologist, indicated that there was "no ongoing nerve damage." (*Id.* at 469.)

6

at 27) and further limited Plaintiff to only frequent reaching, handling, fingering, balancing, stooping, and climbing and no concentrated exposure to hazards (*id.* at 23). Therefore, the opinion evidence supports the ALJ's RFC determination.

Thus, the ALJ properly explained his reasoning and substantial evidence supports his RFC assessment.

### B. Plaintiff's Arguments to the Contrary are Not Persuasive

Plaintiff's more specific arguments in support of her claim that the ALJ erred in making his RFC determination are as follows. First, Plaintiff contends that the ALJ failed to perform a function-by-function analysis, thus Plaintiff's lift/carry and stand/walk limitations are not supported by substantial evidence. (*Id.* at 10-11.) Second, Plaintiff claims that the ALJ's credibility analysis is flawed. (*Id.* at 11-12.) Third, Plaintiff argues that the ALJ relied on irrelevant evidence and ignored other evidence that conflicts with the RFC. (*Id.* at 9-11, 13.) The Court finds these arguments unpersuasive.

### 1. Function-by-Function Analysis

First, Plaintiff contends that the ALJ's RFC finding violates the Fourth Circuit's holding in *Mascio v. Colvin*[4] and SSR 96-8p[5] because he did not expressly indicate how much Plaintiff could lift and carry, perform a function-by-function analysis, or provide a "narrative discussion" linking the evidence to his conclusions. (Docket Entry 16 at 10-11.) This argument is without merit. In *Mascio v. Colvin*, the United States Court of Appeals for the Fourth Circuit

---

[4] 780 F.3d 632 (4th Cir. 2015).

[5] *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *1 (July 2, 1996).

7

addressed whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. 780 F.3d at 636–37. The Court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* In addition, "[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (unpublished).

Here, the ALJ's narrative permits meaningful review because he made an implicit finding of Plaintiff's capacity to lift and carry and stand and walk and explained how he reached that conclusion. First, by finding Plaintiff had the RFC to perform light work (Tr. 23), "the ALJ implicitly found that []he was capable of standing or walking for approximately six hours in an eight-hour work day," and lifting up to twenty pounds occasionally and ten pounds frequently. *Harrison v. Colvin*, No. 1:10-CV-18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) (citing *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006); 20 C.F.R. §§ 404.1567(b) and 416.967(b); SSR 83–10, *Titles II and XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2*, 1983 WL 31251 at *6 (1983)).

Second, although the ALJ did not conduct a function-by-function analysis, it is apparent how the ALJ determined Plaintiff's capacity to lift, carry, stand, and walk. As mentioned above, a proper function-by-function analysis conducted by a state agency

8

consultant can satisfy an ALJ's requirement to conduct a function-by-function assessment. *Herren*, 2015 WL 5725903, at *5. Here, as discussed above, Dr. Kuncha found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently and stand and/or walk about six hours in an eight-hour workday without any additional postural or manipulative limitations. (Tr. 27, 101, 113.) In other words, Dr. Kuncha found that Plaintiff was able to perform the full range of light work. (*Id.*) The ALJ considered Dr. Kuncha's opinion and, giving it some weight, largely incorporated it into the RFC. (*Id.* at 23, 27, 100, 113.) However, the ALJ added additional restrictions by limiting Plaintiff to only frequent postural and manipulative activities, and explained his reasons for doing so. (*Id.* at 23-28.) Specifically, the ALJ stated that he added additional limitations based on Plaintiff's "subjective complains and the combined effect of her impairments." (*Id.* at 27); *see Shore v. Colvin*, No. 1:10CV238, 2013 WL 1320504, at *2 (M.D.N.C. Mar. 29, 2013) (unpublished) (upholding the ALJ's decision notwithstanding the fact that the ALJ did not conduct a function-by-function analysis because the ALJ largely adopted and described the state agency physicians' RFCs and placed even greater limitations on the plaintiff in the RFC). Dr. Kuncha's function-by-function assessment, which the ALJ referenced, thus provides support for the ALJ's RFC determination and allows the Court to conduct a meaningful review of the ALJ's analysis. *Cowles v. Colvin*, No. 1:15CV105, 2016 WL 527063, at *5 (M.D.N.C. Feb. 9, 2016) (unpublished) (reasoning that although the ALJ did not conduct a complete function-by-function analysis, the ALJ gave great weight to the opinions of the state agency consultant and explained that he did so because he found the opinions consistent with the other evidence in the record thereby removing the need to rehash a discussion of the state agency consultant's opinion), *report and recommendation*

9

*adopted*, slip op., (M.D.N.C. Mar. 2, 2016); *see also Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) (unpublished) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with *SSR 96–8p*."). Thus, the ALJ's failure to conduct a function-by-function analysis does not require remand.

## 2.    Credibility Analysis

As the foregoing makes clear, the ALJ considered and to some extent credited Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms. (*Id.* at 24-27, 37-61, 237-43, 252-56, 268-76.) Plaintiff nevertheless contends that the ALJ's credibility analysis[6] was flawed. (Docket Entry 16 at 11-12.) Specifically, Plaintiff argues that "[f]or the ALJ to now say that she was 'not generally credible' without attempting to specifically say where Plaintiff lied is unseemly." (*Id.*)[7]

---

[6] Effective March 28, 2016, *see Social Security Ruling* 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superseded SSR 96-7p with Social Security Ruling 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.* The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," *id.*, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," *id.*, at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (*see* Tr. 29), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, *see Bagliere v. Colvin*, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (unpublished), *recommendation adopted,* slip op. (M.D.N.C. Feb. 23, 2017) (unpublished); *see also Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished), *recommendation adopted*, slip op. (M.D.N.C. May 10, 2016) (unpublished).

[7] Plaintiff also contends that the ALJ's credibility analysis was flawed because he failed to impeach Plaintiff's testimony during the hearing. (Docket Entry 16 at 7, 12.) Defendant rightly counters that because disability proceedings are "inquisitorial rather than adversarial," there was no

10

SSR 96-7p,[8] as applied by the Fourth Circuit in *Craig*, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. *Id.* at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* (internal citations and quotation marks omitted). SSR 96-7p further provides,

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case

requirement that the ALJ attempt to 'impeach' the witness. (Docket Entry 19 at 16 n.2 (quoting *Sims v. Apfel*, 530 U.S. 389, 400-01 (1971).)

[8] *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *1 (July 2, 1996).

11

record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 26.)[9] Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*) The ALJ's conclusion is supported by substantial evidence for the reasons below.

It is clear to the Court the weight the ALJ gave to Plaintiff's statements, and the specific reasons for that weight are well articulated and supported. In making his credibility determination, the ALJ considered "the entire record." (*Id.* at 23). As discussed at length above, the ALJ considered the generally "unremarkable" findings at Plaintiff's medical examinations and benign diagnostic reports. (*Id.* at 25.) *See* SSR 96-7p. In addition, the ALJ noted that Plaintiff had received only conservative treatment from her physicians. (Tr. 22, 24, 26-27.) *See Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015) (unpublished) ("[T]he conservative nature of Appellant's treatment is an adequate basis to support the ALJ's

---

[9] Plaintiff mistakenly suggests that the ALJ's affirmative *Craig* step-one finding indicates the ALJ concluded that Plaintiff's "impairments were 'reasonably likely' to cause the pain that [Plaintiff] alleged, *in the amount and degree she alleged."* (Docket Entry 16 at 9 (emphasis added), 6.) As described above, through step one, an ALJ merely determines that a claimant's impairments could cause the symptoms alleged. *Craig*, 76 F.3d at 594-95. Step two addresses the consistency between the "amount and degree" of symptoms alleged and those supported by the record. *Id.* at 595.

12

conclusion that Appellant's testimony of her disabling condition was incredible."). Finally, the ALJ noted that Plaintiff had worked after the alleged disability date, albeit not at the level of substantial gainful activity. (Tr. 24.) *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999); *Hitchcock v. Colvin*, No. 4:14-CV-00154-FL, 2015 WL 5725662, at *9 (E.D.N.C. Aug. 12, 2015) (unpublished) (citing 20 C.F.R. § 404.1571(a); *Blair v. Astrue*, No. 5:10–cv–112, 2012 WL 625001, at *4 (W.D. Va. Feb. 24, 2012) (collecting cases)) ("Even part-time work that does not rise to the level of substantial gainful activity may be considered by an ALJ in determining whether a claimant is able to do more work than he or she is alleging."), *report and recommendation adopted*, 2015 WL 5725672 (E.D.N.C. Sept. 30, 2015) (unpublished).

Based on the above considerations, the ALJ concluded that the evidence "indicat[ed] that [Plaintiff's] impairments were not as severe as alleged." (Tr. at 26.) In so doing, the ALJ relied on permissible factors, *see* SSR 96-7p, and supported his conclusions with evidence from the record (*see* Tr. 22-27). Therefore, the Court can find no reason to disturb the ALJ's properly supported credibility analysis.

### 3. Plaintiff's Carpel Tunnel Syndrome, "Trigger Finger," and Other Evidence

Finally, Plaintiff contends that the RFC finding was flawed because the ALJ did not account for her carpal tunnel syndrome or diagnosis of "trigger finger" with specific limitations in the RFC. (Docket Entry 16 at 10.) Plaintiff also contends that the ALJ relied on irrelevant evidence (*id.* at 12-13) and ignored evidence that contradicted the RFC (*id.* at 11, 13). The Court disagrees and finds no prejudicial error.

13

First, the ALJ adequately accounted for Plaintiff's carpel tunnel syndrome and trigger finger. As an initial matter, the ALJ agreed that Plaintiff's carpel tunnel syndrome constituted a severe impairment. (Tr. 23.) And, although the ALJ did not mention Plaintiff's "trigger finger," Plaintiff described it at the hearing as a symptom of carpel tunnel, not an independent impairment. (*Id.* at 48.) Thus, there is no reason to believe the ALJ did not adequately consider Plaintiff's "trigger finger." More importantly, "a diagnosis alone, without related functional loss, is insufficient to establish a disability." *Gibbs v. Colvin*, No. 4:15-CV-00053-RN, 2015 WL 9093773, at *4 (E.D.N.C. Dec. 16, 2015) (unpublished) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Here, the record does suggest that Plaintiff's carpel tunnel or "trigger finger" resulted in greater specific functional limitations than those provided for in the RFC. Plaintiff was treated with a wrist splint in 2012 (Tr. 364), but there are no indications of any other treatment for carpal tunnel syndrome, trigger finger, or any other condition in the upper extremities. Physical examinations consistently revealed that Plaintiff had full strength (5/5), normal muscle tone, intact sensation, and intact coordination in her bilateral upper extremities. (*Id.* at 25-26, 300, 350, 352, 364, 462, 468.) A July 2013 full body scan revealed "very mild" degenerative uptake in the left ankle, but was otherwise unremarkable. (*Id.* at 463.) The most recent nerve conduction study in August 2013 was normal and revealed, at most, a "very subtle" mild neuropathy distally, and Dr. Solomon, Plaintiff's neurologist, indicated that there was "no ongoing nerve damage." (*Id.* at 26, 469.) Finally, no medical source opined Plaintiff had specific manipulative limitations (*Id.* at 101, 113, 466.) Nevertheless, the ALJ limited Plaintiff to work that required only frequent reaching, handling, and fingering with the bilateral upper extremities. (*Id.* at 23-27.) Thus, the ALJ credited

14

Plaintiff's complaints of arm pain and hand numbness and incorporated limitations to account for these symptoms in the RFC.

Second, the ALJ appropriately considered and relied on evidence from Plaintiff's physical examinations. Plaintiff argues that whether Plaintiff was alert and oriented, well nourished, in acute distress, and had normal muscle tone is not relevant to the ALJ's RFC determination. (Docket Entry 16 at 12-13.) The Court disagrees. All of these can be indicia of, or contradict, allegations of disabling physical impairment. *See Collier v. Colvin*, No. 9:13-CV-3323-DCN, 2015 WL 1519796, at *12 (D.S.C. Mar. 30, 2015) (unpublished) (citing *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x. 472, 477 (6th Cir. 2008) (unpublished) (finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment)); *Bostic v. Astrue*, No. 2:11-CV-00392, 2012 WL 2771769, at *6 (S.D.W. Va. July 9, 2012) (unpublished) (that claimant was alert and fully oriented, well-developed, and in no acute distress contradicted claimant's claims that he experienced the debilitating limitations identified in medical opinion).

Third, other evidence does not render the RFC unsupported. (Docket Entry 16 at 11, 13.) Plaintiff suggests the ALJ ignored (1) reports of Plaintiff's stooped or antalgic gait (*id.* at 11), (2) Plaintiff's "consistent" use of a cane (*id.* at 11), and (3) a third-party statement describing Plaintiff's apparent pain while working (*id.* at 13). She argues that that this evidence contradicts the RFC. Again, the Court disagrees.

As an initial matter, there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the

15

record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). *See also Anderson v. Colvin*, No. 5:13-CV-00055-RLV, 2015 WL 6394397, at *13 (W.D.N.C. Oct. 22, 2015) (collecting cases). More importantly, the Court has considered Plaintiff's specific allegations and finds them without merit.

To the extent that the ALJ dismissed or declined to discuss certain evidence, the Court finds that any error is harmless. As to Plaintiff's gait, the ALJ acknowledged Dr. Solomon's notes that Plaintiff's gait was stooped on March 22, 2012 (Tr. 25, 299-300) and antalgic on April 18, 2012 (*id.* at 25, 352; *see also* Tr. 394). However, the ALJ also noted, and the record confirms, that Plaintiff's gait was otherwise normal (*Id.* at 25, 350, 364, 468). Thus, the ALJ did not ignore contrary evidence and his reasons for not adopting additional limitations consistent with those isolated observations are clear.

Neither does the ALJ's failure to expressly discuss Plaintiff's allegedly "consistent" use of a cane warrant remand. SSR 96-9p[10] provides that to find that a claimant's use of a hand-held assistive device erodes the occupational base, the device must be medically required as established by medical documentation that describes the circumstances for which it is needed. Courts have found an ALJ's failure to consider the impact of a claimant's use of a hand-held assistive device harmless where no evidence documents its medical necessity and substantial evidence supports the RFC. *See Woodard v. Colvin*, No. 1:14CV882, 2016 WL 1595387, at *6

---

[10] *Policy Interpretation Ruling Titles II an XVI: Determining Capability to do Other Work—Implications of Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, 1996 WL 374185, at *7 (July 2, 1996).

16

(M.D.N.C. Apr. 20, 2016) (concluding that the ALJ did not err in failing to adopt physician's conclusion that claimant required a cane to walk where examinations and imaging was unremarkable and another the record indicated no clinical reason for claimant's reported difficulty walking), *report and recommendation adopted*, 2016 WL 3512211 (M.D.N.C. June 22, 2016) (Tilley, J.); *Demery v. Colvin*, No. 2:13-CV-28-D, 2014 WL 2159347, at *3 (E.D.N.C. Apr. 28, 2014) (unpublished) (concluding that "the ALJ was not required to consider the impact of [the p]laintiff's use of a hand-held assistive device," where there was no "evidence documenting the medical necessity of a cane"); *see also Mitchell v. Colvin*, No. 13-CV-4594, 2014 WL 7051754, at *11-12 (N.D. Cal. Dec. 12, 2014) (unpublished) (concluding that, even though a non-treating medical examiner "found that the [plaintiff's] cane was 'medically necessary,'" the ALJ did not err in determining that "[the plaintiff] had a 'nonantalgic and unassisted gait'" where "the evidence of [the plaintiff]'s need for a cane was unclear, and substantial [record] evidence existed [to support the ALJ's determination]"); *Stewart v. Colvin*, No. 1:12–CV–39, 2013 WL 1979738, at *4–6 (N.D. Tex. May 14, 2013) (unpublished) (upholding as supported by substantial evidence ALJ's decision not to include limitations in RFC based on the plaintiff's use of cane, where no evidence existed of medical necessity).

Here, Plaintiff reported to PA-C Perrotta at her 2012 initial physical therapy evaluation that she could not "perform extended walking [without] some form of support, with [Plaintiff] currently needing a [single point cane]." (Tr. 394.) Plaintiff then testified at her August 2013 hearing that she had been using a cane only for the two preceding months. (*Id.* at 58-59.) Thus, Plaintiff's claim that she used a cane consistently is not supported by the record. In addition, the record makes clear that the ALJ considered both Plaintiff's testimony and PA-C

17

Perrotta's evaluation and thus Plaintiff's allegations that she needed and used a cane. (*Id.* at 23-24, 27.) Nevertheless, no other no source noted that Plaintiff used a cane. Moreover, no acceptable medical source[11] prescribed Plaintiff a cane or otherwise indicated that a cane was medically necessary. And, as noted above, Plaintiff's examinations were generally unremarkable, her imaging was generally benign, and she received only conservative treatment for her impairments. (*Id.* at 24-26, 26, 300, 350, 352, 355, 357, 363-64, 461-62, 465, 468-69, 491-92.). Under these circumstances, the ALJ committed at most harmless error in failing to specifically discuss the medical necessity of a cane or to include limitations in the RFC arising out of Plaintiff's use of a cane.

Finally, the ALJ did not err in failing to expressly discuss a third-party statement. In 2013, Plaintiff's manager, Cheryl J. Cheasty, wrote a letter in which she stated as follows. "[W]atching [Plaintiff] work it is clear how difficult it is on her. Within only a couple hours of work it is apparent how much discomfort and pain [Plaintiff] is in. I can only give her four hour shifts and even that is too much for her." (*Id.* at 291.) Plaintiff argues that the statement is "direct evidence" that confirms Plaintiff's reports of pain. (Docket Entry 16 at 16.) The Court cannot agree. Here, the ALJ expressly found that Plaintiff's impairments were reasonably likely to produce pain and other symptoms. (Tr. 26.) Thus, the statement

---

[11] Social Security Ruling 06-03p provides that only "acceptable medical sources" can include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists—but not certified physician assistants or licensed clinical social workers. *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental agencies,* 2006 WL 2329939 at *2 (Aug. 9, 2006). Certified physician assistants are considered "other sources." *Id.*

18

indicating Plaintiff experiences pain it is not inherently contradictory to the RFC. To the extent that Ms. Cheasty's statement that Plaintiff's four hour shifts are too much for her is in conflict with the RFC which allows for full-time light-exertion work, it mirrors Plaintiff's testimony. (Tr. 22, 43-44, 51-52.) But, as discussed previously, neither the objective nor the opinion evidence supported Plaintiff's allegation. Thus, despite the ALJ's failure to expressly discuss Ms. Cheasty's statement, his opinion is susceptible to judicial review and does not warrant remand.

In sum, the ALJ considered the objective evidence, the opinion evidence, and Plaintiff's testimony and included the limitations he found consistent with that evidence in the RFC. The objective and opinion evidence of record supports the ALJ's conclusion that the RFC adequately accounted for Plaintiff's limitations. The ALJ's reasons for omitting any restrictions to Plaintiff's capacity to lift, carry, stand, or walk beyond the limitation to light work are well articulated and clear. Although Plaintiff argues that the evidence directs a different conclusion, this court is "not at liberty to 'reweigh conflicting evidence ... or substitute [its] judgment for that of the [ALJ].'" *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (third alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). The undersigned thus finds that the substantial evidence supports RFC.

## C. Hypothetical to the VE

In a related argument, Plaintiff contends that "[t]he ALJ erred by failing to include all of [Plaintiff's] limitations in the hypothetical question to the VE, and by including in the hypothetical capacities that [Plaintiff] clearly does not have." (Docket Entry 16 at 14.)

19

A hypothetical to the VE must "fairly set out all of [a] claimant's impairments" "based upon a consideration of all other evidence in the record." *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a RFC for which the ALJ had sufficient evidence, and need only include those impairments supported by the record. *Id.*; *Johnson*, 434 F.3d at 658; *see also Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that an ALJ is not required to credit VE testimony elicited in response to a hypothetical question that includes limitations the ALJ finds not to be credible).

Here, the ALJ accounted for Plaintiff's alleged limitations, to the extent they were credible, by limiting her to light work that required no more than frequent reaching, handling, and fingering with her bilateral upper extremities; frequent balancing and stooping; frequent climbing ladders, ropes, and scaffolds; and that she had to avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights. (Tr. 23-27.) Plaintiff's suggestion that the hypothetical failed to account for her alleged trigger finger or other symptoms (Docket Entry 16 at 14) is an extension of her contention that the ALJ's RFC determination was flawed. However, as discussed at length above and throughout the ALJ's decision, the ALJ correctly considered the entirety of the medical and other evidence in assessing Plaintiff's RFC and appropriately determined that the evidence did not warrant further limitations.[12]

---

[12] To the extent Plaintiff argues she is not capable of the lift, carry, stand, or walk requirements of light work, the undersigned has found that substantial evidence supports the ALJ's determination. To the extent that Plaintiff claims she cannot frequently balance or stoop, and takes particular issue with the ALJ's determination that she can frequently climb ladders, ropes and

20

Case 1:15-cv-00403-NCT-JLW   Document 20   Filed 07/20/18   Page 20 of 21

Because the ALJ properly evaluated the evidence in formulating the hypothetical question that he posed to the VE, and because the ALJ's hypothetical question to the VE fairly set forth all of Plaintiff's credibly established physical functional limitations, the VE's testimony that Plaintiff could perform her past work as a cosmetologist (the same work she was performing throughout the relevant period on a part-time basis) constitutes substantial evidence supporting the ALJ's decision that Plaintiff was not disabled.

## V.     CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.     Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

July 20, 2018
Durham, North Carolina

---

scaffolds, these activities are not required by the work of a cosmetologist.  *See* cosmetologist, Dictionary of Occupational Titles ("DOT") 332.271-010, 1991 WL 672806 (4th Ed. Rev. 1991); *Pearson v. Colvin*, 810 F.3d 204, 205 (4th Cir. 2015) ("The Dictionary of Occupational Titles, and its companion, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .  are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.").

21