# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BECKY A. DZIOK,<br><br>        Plaintiff,<br>   v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social<br>Security,<br><br>        Defendant. | 1:15CV403 |

## MEMORANDUM OPINION AND ORDER

The Recommendation of the United States Magistrate Judge ("Recommendation") was filed with the Court on July 20, 2018 and notice was served on the parties in accordance with 28 U.S.C. § 636(b). [Docs. #20, 21.] Plaintiff Becky A. Dziok ("Dziok") objected to the Recommendation within the time limits prescribed by 28 U.S.C. § 636, (Objs. to the Magistrate's Recommendation ("Dziok's Objs.") [Doc. #23]), to which Nancy A. Berryhill ("Commissioner") responded, (Defendant's Response to Plaintiff's Objs. to R. & R. of the U.S. Magistrate Judge [Doc. #24]). For the reasons explained below, the Recommendation is ADOPTED.

I.

The Court has appropriately reviewed the portions of the Magistrate Judge's Recommendation to which objection was made and has made a de novo determination to adopt the Recommendation. Dziok asserted five objections, arguing the Magistrate Judge erred by: (1) "misconstruing Craig v. Chater [sic] . . . regarding what must be shown at Step One of the pain analysis;" (2) "finding that the ALJ [Administrative Law Judge] made a function-by-function assessment supported by a narrative discussion;" (3) "affirming the Decision [of the ALJ] despite the ALJ's failure to pose an RFC [Residual Functional Capacity] and hypothetical question that accounted for Dziok's trigger finger and her difficulty holding things;" (4) "ignoring the requirement that the ALJ specify what claimant testimony he found unbelievable and why;" and (5) "excusing the ALJ's failure to consider the favorable statement by Dziok's employer." (See generally Dziok's Objs.) Each objection is addressed in turn.

A.

Dziok's first objection is that the Magistrate Judge misconstrued Craig v. Chater, 76 F.3d 585 (4th Cir. 2015), regarding what must be shown at Step One of the pain analysis. To support this objection, Dziok makes two arguments; first, that the Magistrate Judge misconstrued the first step of the Craig pain analysis ("Step One") by omitting the phrase "in the amount and degree alleged" and second, that it was an error to say "could cause" instead of "could reasonably be expected to produce." (Dziok's Objs. 1-3.)

1.

Dziok first argues that the Magistrate Judge failed to state Craig Step One correctly when he omitted the phrase, "in the amount and degree she alleged." (Id. at 2.) The Craig case created a two-part test that ALJs must use to determine "whether a person is disabled by pain or other symptoms." Craig, 76 F.3d at 594. The Craig court describes Step One as "first, there must be objective medical evidence showing the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing 20 C.F.R. §§ 416.929(b), 404.1529(b))[1].

Dziok argues that "Craig itself said that the legal import of a positive Step One is that objective medical evidence shows the claimant to have medical impairments that are reasonably likely to cause the pain she alleged, in the amount and degree she alleged." (Dziok's Objs. at 2.) (emphasis added) (internal quotations omitted). The Magistrate Judge commented in Footnote 9 of his Recommendation that Dziok's inclusion of "in the amount and degree she alleged" in her definition of Step One was an error. (Recommendation at 12, n.9.)

The disagreement between Dziok and the Magistrate Judge over the appropriate way to define Step One can be solved by a further reading of Craig. After defining Step One, the court further explains,

> It is significant that the current regulations . . . were drafted using the definite article 'the' and the adjective 'alleged.' Therefore, for pain to

---

[1] Because Dziok's argument focuses solely upon Step One of the Craig analysis, Step Two is neither described nor discussed.

3

> be found disabling, there <u>must</u> be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but <u>the pain the claimant alleges she suffers</u>. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant.

<u>Craig</u>, 76 F.3d at 594 (emphasis in original). The <u>Craig</u> court then goes on to explain,

> [t]his threshold test does not . . . entail a determination of the intensity, persistence, or functionally limiting effects of the claimant's asserted pain . . . . <u>At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment</u> . . . ."

<u>Id.</u> (emphasis added) (internal quotes and citations omitted).

Thus, it is clear from the language of <u>Craig</u> that both the Magistrate Judge and Dziok are correct. Dziok is correct that the purpose of Step One is to show that the impairment alleged could cause the plaintiff's unique pain and pain severity. The Magistrate Judge is correct in stating, "through step one, an ALJ merely determines that a claimant's impairments could cause the symptoms alleged. Step two addresses the consistency between the amount and degree of symptoms alleged and those supported by the record." (Recommendation at 12, n.9) (internal citations and quotations omitted).

Given that the Magistrate Judge is correct in his description of <u>Craig</u>, Dziok's argument that the Magistrate Judge's failure to include this phrase "minimizes the significance of a <u>Craig</u> positive Step One finding," (Dziok's Objs. at 2), has no merit. The Magistrate Judge used the correct definition, but simply did

4

not add the extra language Dziok sought to include.  This did not undermine his inquiry however, because he evaluated the ALJ's opinion to make sure that he considered whether the impairments could cause Dziok's symptoms.  Therefore, there is no error and Dziok's objection is overruled.

2.

Dziok's second argument within her first objection is that the Magistrate Judge's use of the phrase "could cause" is incorrect, because the Craig court uses the phrase "could reasonably be expected to produce." (Id. at 3.)  Dziok argues, "[t]here is a vast difference between 'could cause,' on the one hand, and 'could reasonably be expected to produce [or cause]', on the other." (Id.) (emphasis in original).  This argument is without merit.  In fact, the Craig court itself uses the phrase "could cause" later in its opinion, in lieu of "could reasonably be expected to produce." Craig, 76 F.3d at 594.  For example, in speaking about what is required at Step One, the court stated, "[t]here is, of course, a fundamental difference between objective evidence of pain . . . and objective evidence of a medical condition which could cause the pain alleged. Id. (emphasis added).  Given that the Craig court itself uses the two phrases interchangeably, there is no error when the Magistrate Judge does the same.  Therefore, Dziok's objection is overruled.

B.

1.

Dziok's second objection is that the ALJ failed to make a function-by-function assessment supported by a narrative discussion, and therefore the case should be remanded. (Dziok's Objs. at 3.) While it is true that an ALJ is supposed to perform a function-by-function assessment, "the Fourth Circuit has rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Woodlief v. Berryhill, No. 5:16-CV-00191-FL, 2017 WL 4164076, at *3 (E.D.N.C. Sep. 20, 2017) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). Instead, remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. In other words, remand is only required when the court is "left to guess about how the ALJ arrived at his conclusions." Id.

Woodlief v. Berryhill provides an example of a sufficient functional assessment that does not follow a function-by-function format. In Woodlief, the ALJ "noted plaintiff's testimony regarding her inability to stand for more than 30 to 40 minutes, summarized the medical records thoroughly, then turned to opinion evidence, giving great weight to the opinion of medical consultive examiner, Dr. Morris." 2017 WL 4164076, at *3. The court determined that this

6

information constituted a functional assessment that "allow[ed] the court to conduct a meaningful review of the ALJ's analysis." Id.

The instant case is factually similar. Here, the ALJ first noted the claimant's testimony regarding her health problems and her ability to function in daily life, then summarized the medical evidence in the case, and finally evaluated the credibility of Dziok and the health care professionals consulted about the case. (Social Security Administration Office of Disability Adjudication and Review Decision ("ALJ Decision"), Administrative Record ("AR") at 23-27; see also Recommendation at 5-8.) This is a sufficient functional assessment that allows a meaningful review of the ALJ's analysis[2]. Therefore, remand is not necessary because the court is not left to guess about how the ALJ arrived at his conclusions.

2.

In addition to arguing that the ALJ's function-by-function assessment was insufficient, Dziok also argues that "the record contains contradictory evidence regarding the strength demands, and thus under Mascio, remand is required." (Dziok's Objs. at 6.) This argument has no merit. Under Mascio, remand is only appropriate when an ALJ "fails to assess a claimant's capacity to perform relevant

---

[2] It is worth noting that in addition to arguing that the ALJ did not conduct an appropriate function-by-function assessment, Dziok further argued that the function-by-function assessment conducted by the state agency consultant could not satisfy the ALJ's requirement to conduct such assessment. Given that the ALJ did conduct a sufficient functional assessment, Dziok's argument is moot.

7

functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. This language has been interpreted to mean that remand is required if the ALJ does not asses a plaintiff's capacity to perform when contradictory evidence exists in the record. See Thomas v. Berryhill, No. 3:17-cv-00067-FDW, 2018 WL 1431746, at *4 (W.D.N.C. Mar. 22, 2018) ("This RFC discussion sufficiently explains the basis for Plaintiff's capacity to perform relevant functions as well as why Plaintiff's mild mental health impairments found at step two do not translate into work-related limitations . . . Plaintiff has not shown that the ALJ failed to consider or explain contradictory evidence in the record . . . [T]he ALJ discussed a great deal of evidence relevant to Plaintiff's mental impairments and adequately assessed Plaintiff's 'capacity to perform relevant functions [and] contradictory evidence in the record.'")

In the present case, evidence contradictory to the ALJ's ultimate RFC determination exists, but the ALJ considered and explained it adequately. (See ALJ Decision at 23-27.) For example, the ALJ considered evidence contradictory to his RFC determination, such as Dziok's testimony, that she could lift and carry no more than eight pounds and stand no more than 15 to 20 minutes, and explained that he arrived at his contradictory determination by weighing Dziok's credibility against the objective medical evidence. (Id. at 23-26.) Thus, because the ALJ's analysis sufficiently permits meaningful review, and because he

considered and explained the contradictory evidence in the record, remand is not required and Dziok's objection is overruled.

C.

Dziok's third objection is that the Magistrate Judge erred in affirming the decision of the ALJ because the ALJ failed "to pose an RFC and hypothetical question that accounted for Dziok's trigger finger and her difficulty holding things." (Dziok's Objs. at 7.)  The arguments in support of this objection are essentially identical to the objections considered by the Magistrate Judge. Therefore, for the reasons stated in the Magistrate Judge's Recommendation, Dziok's objections regarding her carpal tunnel syndrome are overruled.  For the reasons stated in the Magistrate Judge's analysis and for the reasons explained below, Dziok's trigger finger argument is also overruled.

Dziok testified at her hearing that her trigger finger was a symptom of her carpal tunnel syndrome. (AR 48.)  However, she argues that it was inappropriate for the ALJ to credit her testimony because "Dziok is no physician; she has no business regarding trigger finger as a part of Carpal Tunnel Syndrome in her case." (Dziok's Objs. at 8-9.)

There are exactly two references of trigger finger in the administrate record. First, on page 461 of the 475 pages of the Administrative Record, Dr. Solomon, of Pinehurst Neurology, wrote "[s]he also describes a trigger finger of the fourth digit of the right hand." (AR 461.)  Second, in the hearing before the ALJ, Dziok was asked what symptoms of carpal tunnel she experienced, and she responded,

9

"I have pain, and I have one finger that goes like this[3] and I have to straighten it out." (Id. at 48.) Neither of these references constitute a diagnosis of trigger finger. Even if they did, "a diagnosis alone, without related functional loss, is insufficient to establish a disability." Gibbs v. Colvin, No. 4:15-CV-00053-RN, 2015 WL 9093773, at *4 (E.D.N.C. Dec. 16, 2015). Just as there was no diagnosis, there is no documented resulting functional loss from Dziok's trigger finger. (See generally AR at 1-475.) Therefore, Dziok's trigger finger would not and does not affect the ALJ's RFC or hypothetical, and her objection is overruled.

## D.

### 1.

Dziok's fourth objection is that the Magistrate Judge erred by "ignoring the requirement that the ALJ specify what claimant testimony he found unbelievable and why." (Dziok's Objs. at 11.) Dziok argues that the ALJ was not specific enough in identifying the testimony he disbelieved. (Id. at 10). It is true that under Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017), an ALJ must "assess the credibility of the claimant's statements about symptoms and their functional effects." However, in Ladda v. Berryhill, ___ F. App'x ___ , No. 17-1366, 2018 WL 5096065, at *3-*4 (4th Cir. Oct. 18, 2018), the Fourth Circuit concluded an ALJ appropriately assessed the credibility of the claimant's statements when he discussed and analyzed the evidence, gave reasons for why the claimant's

---

[3] There is no explanation in the record to indicate what Dziok demonstrated to the ALJ.

statements were not credible, and considered whether the claimant's statements conflicted with other evidence.

In the present case, the ALJ engaged in the same analysis. First, he discussed and analyzed the evidence in the case, including Dziok's testimony, her treatment records from Sandhills Urgent Care, Harvey W. Wolf, M.D., Pinehurst Neurology, and Central Carolina Hospital, and her nerve conduction study. (AR 24-26.) Then, he gave reasons why Dziok's testimony was not credible, and he considered whether her statements conflicted with other evidence. (Id. at 26-27.) The ALJ noted that, although Dziok complained of pain throughout her body, her physical examinations were unremarkable and generally normal. (Id.) Additionally, the ALJ noted that, although Dziok complained of shortness of breath, chest pain, and obesity, her diagnostic tests were unremarkable, she had no motor or neurological deficits, and her treatment was conservative. (Id. at 27.) Thus, the ALJ appropriately assessed the credibility of Dziok's symptoms and their functional effects and, therefore, her objection is overruled.

2.

In addition to challenging the ALJ's credibility analysis, Dziok also challenges the ALJ's failure to consider her purported need to use a cane (Dziok's Objs. at 10.) SSR 96-9P provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." 1996 WL 374185, at *7 (July 2, 1996).

11

Further as the Magistrate Judge noted, "an ALJ's failure to consider the impact of a claimant's use of a hand-held assistive device [such as a cane] [is] harmless where no such evidence documents its medical necessity and substantial evidence supports the RFC." (Recommendation at 16) (citing cases).

In this case, there is no evidence documenting the medical necessity of a cane. Dziok points to page 393 of the Administrative Record, which she states is a therapist's determination that she must use a cane. (Dziok's Objs. at 11.) In fact, the alleged therapist determination is actually the first page of a "Physical Therapy Initial Evaluation," and under the subheading "History of Present Illness Or Injury," it states that Dziok was given hand braces to use, but there is no similar indication that Dziok was told to use a cane. (AR 393.) Instead, it appears Dziok told her physical therapist that she must use a cane to walk long distances. (Id.) No other mention is made of her usage of the cane in the rest of the evaluation, and importantly, in the section entitled "Plan of Care," where her physical therapist outlines his treatment plan for Dziok, nothing is said to confirm or require that Dziok use a cane. (Id. at 395.) Therefore, there is no evidence documenting the medical necessity of Dziok's cane.

Additionally, even if Dziok's physical therapist had told Dziok to use a cane, for medical opinions to have weight in Social Security cases, they can only be given by acceptable medical sources, which does not include physical therapists. SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006); see Akbar v. Colvin, No. 5:13-CV-486-BO, 2014 WL 975519, at *2 (E.D.N.C. Mar. 12, 2014) ("Physical therapists

12

are not accepted medical sources under the regulations."). Therefore, even if this document did contain a diagnosis that Dziok needed a cane, it could not be given controlling weight, because it would not constitute a medical opinion from an acceptable medical source. Thus, Dziok's objection is overruled.

E.

Dziok's final objection is that the Magistrate Judge erred by "excusing the ALJ's failure to consider the favorable statement by Dziok's employer." (Dziok's Objs. at 11.) Dziok argues that the statement by her employer is, for all practical purposes, a Third-Party Function Report and that accepting the Magistrate Judge's recommendation "would mean that if an ALJ makes a positive Step One finding, he may always ignore a Third-Party Function Report that corroborates the pain alleged." (Id. at 12.)

A Third-Party Function Report is a form issued by the Social Security Administration which contains various questions regarding the claimant's abilities and the following language,

> Anyone who makes or causes to be made a false statement or representation of material fact for use in determining payment under the Social Security Act, or knowingly conceals or fails to disclose an event with an intent to affect an initial or continued right to payment, commits a crime punishable under Federal Law by fine, imprisonment, or both, and may be subject to administrative sanctions.

Social Security Administration, Function Report - Adult - Third Party Form SSA-3380-BK, https://www.ssa.gov/forms/ssa-3380.pdf. In contrast, the document submitted by Dziok's employer is a letter which neither provides all the

13

information sought by a Third-Party Function Report Form nor includes a similar acknowledgement that the letter is written with the understanding that there are consequences for providing false information to the government. (See AR 291.) Therefore, contrary to Dziok's contentions, the letter is not a Third-Party Function Report.

Instead, the letter is additional evidence. Both Dziok's counsel and counsel for the Commissioner have failed to mention that the letter submitted by Dziok's employer was not submitted to the ALJ as evidence but was instead submitted for the first time to the Appeals Council. (See AR 14.) When the Appeals Council receives additional evidence, it must review that evidence if it is "new and material evidence relating to the period on or before the date of the ALJ decision." Parham v. Comm'n of Soc. Sec., 627 F. App'x 233, 233 (4th Cir. 2015) (quoting Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (en banc)). "Evidence is new if it is not duplicative or cumulative and is material if there is a reasonable possibility that the new evidence would have changed the outcome." Meyers v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011) (internal quotations omitted) (citing Wilkins, 953 F.2d at 96). If the evidence is new and material, the case should be remanded. See Parham, 627 F. App'x at 233 (finding that the additional evidence "constitutes new and material evidence that should have prompted remand to the ALJ for full and appropriate consideration.")

In this case, the letter does not constitute new and material evidence, and therefore, remand is not necessary. The letter is not new and material evidence

because it is duplicative of Dziok's testimony, and more importantly, there is not a reasonable possibility that the letter would likely change the outcome of the ALJ's decision. For example, it does not contain specific information that could have changed the ALJ's credibility determination, such as when Dziok's pain first became evident to her employer, how Dziok's pain manifested itself in her work, how long Dziok could work before taking a break, or why her employer kept her as an employee despite her limitations. Instead, the letter simply states that Dziok has an amazing work ethic, but that "[w]ithin only a couple hours of work it is apparent how much discomfort and pain Becky is in. I can only give her a four hour shifts and even that is too much for her." (AR 291.) This information is not enough to make the letter new and material evidence.

Additionally, the letter is not attested to through a signed affirmation or a notary stamp, so it necessarily carries less weight than if Dziok's employer had testified or written under oath. Therefore, remand is not necessary, and Dziok's objection is overruled.

II.

For the reasons stated herein, IT IS HEREBY ORDERED that the Recommendation of the United States Magistrate Judge [Doc. #20] is ADOPTED. IT IS FURTHER ORDERED that Plaintiff Becky A. Dziok's Motion for Judgment on the Pleadings [Doc. #15] is DENIED, that Commissioner's Motion for Judgment on

the Pleadings [Doc. #18] is GRANTED, and that the final decision of the Commissioner is upheld.

This the 29th day of November, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge